UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x  Civil No.: 14-CV-6017 (CS)

KENNETH M. HERVOCHON,

                Plaintiff,

     -against-

IONA COLLEGE,

           Defendant/Third-Party Plaintiff,

     -against-

HENNESSEY CONSTRUCTION CO., INC.,

           Third-Party Defendant/
           Fourth-Party Plaintiff,

     -against-

GOTHAM INSURANCE COMPANY,

           Fourth-Party Defendant.

------------------------------------------------------------------- x

IONA COLLEGE,
           Defendant/Third-Party Plaintiff/
           Second Third-Party Plaintiff,

     -against-

GOTHAM INSURANCE COMPANY,

           Second Third-Party Defendant.

------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF IONA COLLEGE'S MOTIONS FOR SUMMARY JUDGMENT

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for Defendant Iona College
1133 Westchester Avenue
White Plains, New York 10604
(914) 323-7000

# Table of Contents

Table of Authorities .................................................................................................... iii

Preliminary Statement.................................................................................................. 1

Statement of Facts......................................................................................................... 4

    The Executed Hennessey Contract ......................................................................... 4

    The Hervochon Action.............................................................................................. 5

    The Gotham Policy .................................................................................................... 6

    Gotham's Denial of Coverage .................................................................................. 8

Standard of Review....................................................................................................... 9

Argument ...................................................................................................................... 10

    Third Party Action .................................................................................................... 10

POINT I    IONA IS ENTITLED TO SUMMARY JUDGMENT AGAINST
             HENNESSEY ON ITS THIRD, FOURTH, AND FIFTH CAUSES
             OF ACTION................................................................................................. 10

    A.    Hennessey Must Indemnify and Defend Iona ................................................ 10

        1.    Hennessey Acknowledges its Obligation to Indemnify
             and Defend Iona ................................................................................... 10

        2.    Iona Has Established its Right to Contractual Indemnification ........... 10

    B.    Hennessey Breached the Contract by Failing to Procure Insurance
        and Indemnify Iona ......................................................................................... 12

    Second Third-Party Action ...................................................................................... 14

POINT I    GOTHAM MUST INDEMNIFY AND DEFEND IONA BECAUSE
             THE HENNESSEY CONTRACT IS AN INSURED CONTRACT
             AND IONA QUALIFIES AS AN ADDITIONAL INSURED UNDER
             THE GOTHAM POLICY ....................................................................... 14

    A.    The Hennessey Contract Was Executed Prior to Hervochon's Accident ..... 14

    B.    The Terms of an Insurance Policy are Construed Against the Insurer.......... 16

C.   The Hennessey Contract is an "Insured Contract" and Iona Qualifies as an "Additional Insured" under the Gotham Policy ..................................... 17

D.   Having Breached its Duty to Defend Iona, Gotham Must Reimburse Iona For the Past and Accruing Costs of Defense, with Interest........................... 19

Conclusion .................................................................................................................... 20

5943243v.1

**Table of Authorities**

**Cases**

*10 Ellicott Square Court Corp. v. Mt. Valley Indem. Co.*, 634 F.3d 112 (2d Cir. 2010)........ 15, 16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..................................................... 9

*Bellefleur v. Newark Beth Israel Med. Ctr.*, 66 A.D.3d 807 (2d Dept. 2009) .............................. 11

*Bishop v. Toys "R" Us-NY, LLC*, 2009 U.S. Dist. LEXIS 17377 (S.D.N.Y. Feb. 19, 2009)....... 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................. 9

*Consolidated Edison Co. of N.Y. v. Allstate*, 98 N.Y.2d 208 (2002) ............................................ 17

*Davidson v. Hilton Hotels Corp.*, 266 A.D.2d 336 (2d Dept. 1999) ............................................ 19

*DiMuro v. Town of Babylon*, 210 A.D.2d 373 (2d Dept. 1994) ................................................... 12

*Flores v. Lower E. Side Serv. Ctr., Inc.*, 4 N.Y.3d 363 (2005)...................................................... 11

*Handelsman v. Sea Ins. Co.*, 85 N.Y.2d 96 (1994)..................................................................... 17

*Hunter Roberts Constr. Group, LLC v. Arch Ins. Co.*, 75 A.D.3d 404 (1st Dept. 2010) ............. 19

*Kader v. City of N.Y. Hous. Preserv. & Dev.*, 16 A.D.3d 461 (2d Dept. 2005) .......................... 11

*Kielty v. AJS Constr. Of L.I., Inc.*, 83 A.D.3d 1004 (2d Dept. 2011) .......................................... 11

*Kinney v. G.W. Lisks Co., Inc.*, 76 N.Y.2d 215 (1990).......................................................... 12, 13

*LaRosa v. Internap Network Servs. Corp.*, 83 A.D.3d 905 (2d Dept. 2011) ................................ 10

*Lynch v. Figge*, 200 A.D. 92 (2d Dept. 1922) ......................................................................... 15

*Mazzola v. Cnty. of Suffolk*, 143 A.D.2d 734 (2d Dept. 1988) ..................................................... 15

*National Union Fire Ins. Co. of Pittsburgh v. Greenwich Ins. Co*, 103 A.D.3d 473 (1st Dept. 2013) ..................................................................................................................................... 19

*Powell v. National Bd. Of Med. Examiners*, 364 F.3d 79 (2d Cir. 2004) ...................................... 9

*Rodless Properties, L.P. v. Westchester Fire Insurance Co.*, 40 A.D.3d 253 (1st Dept. 2007)... 15

5943243v.1

*Thompson v. Gjivoje*, 896 F.2d 716 (2d Cir.1990) ............................................................. 9

*United Parcel Serv. v. Lexington Ins. Group*, 983 F. Supp. 2d 258 (S.D.N.Y. 2013) .................. 20

*Zito v. Occidental Chemical Corp.*, 259 A.D.2d 1015 (4th Dept. 1999) ...................................... 13

**Statutes**
New York Labor Law § 240(1) ................................................................................................... 2

**Other Authorities**
*Black's Law Dictionary* 949 (10th ed. 2014) ............................................................................. 3

**Rules**
CPLR §§ 5001, 5004 .................................................................................................................. 20

iv

## Preliminary Statement

Defendant/Third-Party Plaintiff/Second Third-Party Plaintiff, Iona College, ("Iona")
submits this memorandum of law in support of its motions pursuant to Rule 56 for an Order: (i)
granting summary judgment against Hennessey Construction Co., Inc. ("Hennessey") declaring
(a) that Hennessey is required to provide Iona with contractual defense and indemnification; (b)
granting summary judgment on Iona's claims against Hennessey for breach of contract for
failing to defend Iona and to procure liability insurance protecting Iona; and (ii) granting
summary judgment, on Iona's second third-party complaint against Gotham Insurance Company
("Gotham"), *inter alia*: (a) declaring that Gotham is obligated to defend, indemnify, and hold
Iona harmless, (b) declaring that Gotham is obligated to reimburse Iona and/or its insurance
carrier for all legal expenses, costs and disbursements; (c) declaring that Gotham is obligated to
pay all future legal fees and defense costs; (d) declaring that Gotham must indemnify and hold
harmless Iona for the legal fees and costs incurred in prosecuting the first and second third-party
actions against Hennessey and Gotham; and (e) granting summary judgment on Iona's claim
against Gotham for breach of contract.

This is an insurance coverage dispute in connection with a pending underlying personal
injury action. Iona is named as a defendant in the underlying action. On July 27, 2013,
Hennessey employee, Kenneth M. Hervochon ("Hervochon"), was injured while performing
construction and renovation, at Iona's premises located at 715 North Avenue, New Rochelle,
New York (the "Premises"). Subsequently, Hervochon commenced an action under docket
number 14-CV-6017 seeking monetary compensation for damages he allegedly sustained as a
result, *inter alia*, of Iona's violations of New York Labor Law (the "Hervochon Action").

Summary judgment motions in the personal injury action are fully submitted. Plaintiff's motion against Iona is based solely on the absolute liability provision of New York Labor Law § 240(1).

The written contract executed by Hennessey (discussed *infra* as the "Hennessey Contract") prior to Hervochon's accident is straightforward and unambiguous. It requires Hennessey to indemnify, defend and hold Iona harmless under the facts and circumstances of the alleged incident involving Hervochon. Additionally, Hennessey promised to procure insurance naming Iona as an additional insured under its Gotham Policy. The Gotham Policy does, in fact, include an endorsement that gives Iona additional insured status in connection with the Hervochon Action. Hennessey does not dispute that it was obligated to indemnify and defend Iona, and Hennessey does not dispute that it was obligated to obtain additional insured coverage for Iona. Indeed, there can be no dispute that the Hervochon Action falls within the scope of coverage contemplated by the Gotham Policy.

Accordingly, prior to instituting the third-party action and the second third-party action, Iona and its insurance carrier, United Educators, repeatedly tendered Iona's defense to Gotham and Hennessey after Iona received notice of the Hervochon Action. Despite this, Gotham did not assume Iona's defense, which caused Iona to needlessly incur the costs associated with defending the Hervochon Action. In the face of Gotham's refusal to meet its legal obligations under its own policy, Gotham forced Iona to resort to instituting the third-party action against Hennessey ("Third-Party Action") and the second third-party action against Gotham ("Second Third-Party Action").

Gotham's denial of coverage is based on a spurious contention that the Hennessey Contract is invalid because it was not "executed" prior to Hervochon's accident, as required under the Gotham Policy's additional insured endorsement. However, Gotham's position has no

2

basis in fact or law. Under its plain meaning and the basic tenants of contract law, the term "executed" means *sign*,[1] and under the circumstances here, it cannot be disputed that the Hennessey Contract was "executed" when it was signed by Hennessey before it commenced work and prior to Hervochon's accident. Additionally, the parties had been performing with the full intent to be bound by the terms of the Hennessey Contract prior to Hervochon's accident.

Gotham's untenable position is further eroded by the plain language of its own policy, which requires that an insured contract be "executed" prior to the occurrence of a bodily injury. Here, Hennessey did "execute" its contract with Iona when it signed it and delivered it to Iona before Hervochon's accident.

For these reasons, Gotham's denial of coverage against Iona has no basis in law or fact. Iona has established the existence of an "executed," valid and enforceable written agreement with Hennessey entered into prior to Hervochon's accident. Accordingly, Iona is entitled, as a matter of law, to summary judgment against Hennessey, for the relief set forth above. And as such, Iona is entitled, as a matter of law, to summary judgment for an order declaring that Gotham must defend, indemnify and hold Iona harmless in the Hervochon Action as an additional insured under the Gotham Policy.

---

[1] Black's Law Dictionary defines "execute" as, *inter alia*: "To perform or complete (a contract or duty)"; and "To make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form." *Black's Law Dictionary* 949 (10th ed. 2014).

## Statement of Facts

The relevant facts are contained in Iona's Local Rule 56.1 statement of material facts, to which the Court is respectfully referred. All exhibits referenced herein are annexed to the Attorney Declaration of Peter A. Meisels ("Meisels Dec.").

### *The Executed Hennessey Contract*

Iona and Hennessey entered into a contract, which had been negotiated pursuant to a written, executed proposal (the "Proposal") and reduced to writing on March 27, 2013, for certain carpentry, renovations, and construction at Iona's campus located in New Rochelle, New York (the "McSpedon Hall Project"). Hennessey executed and delivered the contract to Iona prior to commencing work on the McSpedon Hall Project and prior to Hervochon's accident. *See* Rule 56.1 Statement at ¶¶ 3-6; Ex. P, at 34:11-25; 50:5-16.

Thomas Hennessey, the president of Hennessey, testified that Hennessey signed the Hennessey Contract prior to commencing work on the McSpedon Hall Project:

> Q        Did you sign the contract before you started the work?
> A        Yes.

*See* Ex. P, at 57:11-12.

Section 13 of the Hennessey Contract, entitled "Insurance Coverage," requires Hennessey to procure a comprehensive general liability insurance policy and provide additional insured status for Iona on such policy. In this regard, Section 13 provides, in pertinent part, as follows:

> Contractor and each subcontractor will provide at their sole cost and expense comprehensive general liability coverage and broad form property damage coverage, including coverage for liability assumed by contract, explosion, collapse, and underground hazard. Limits of coverage shall be no less than $2,000,000/$5,000,000 bodily injury and $5,000,000 property.

* * *

4

> Contractor shall submit to the College, before commencement of work, a duplicate    original of the aforesaid policies or a certificate(s) evidencing such insurance which shall name the College as a co-insured.

*See* Ex. B, Section 13.

Hennessey fully knew and understood that a condition of the contract was that it would procure additional insured coverage for Iona. To that end, when Hennessey executed and delivered the Hennessey Contract it also provided Iona with a certificate of insurance identifying Iona as an additional insured under the Gotham Policy. *See* Rule 56.1 Statement at ¶ 24; Ex. B, Section 13; Ex. D; Ex. P, at 47:23-25; 48:2-7.

Section 14 of the Hennessey Contract, entitled "Indemnity," requires Hennessey to defend, indemnify, and hold Iona harmless with respect to incidents as alleged in the Hervochon Action. In this regard, Section 14 provides in pertinent part, as follows:

> Contractor shall defend and indemnify the College, its trustees, officers, employees, faculty, agents or invitees and hold same fully and completely safe and harmless from all loss, claims, suits, damages, fines, penalties, expenses, and attorney fees arising out of bodily injury or death, or damage to or destruction of property arising out of or encountered in connection with the prosecution of the project or its use thereafter, regardless of whether such injury to or death or persons or damage to or destruction of property is due in part or claimed to be due in whole or part to any negligence or fault of the College or its trustees, officers, employees, faculty, agents, or invitees, other than when such injury, death or damage has been proved in a court of law to have arisen from the sole gross negligence or willful misconduct of the College. Contractor shall also defend and indemnify the College and hold the College fully and completely safe and harmless from all loss, claims, suits, damages, expenses, and attorney fees arising out of the recording of any mechanics lien or the assertion of any stop notice against the College. This indemnity agreement shall survive the termination of this agreement.

*See* Ex. B, Section 14.

### *The Hervochon Action*

Hervochon filed his complaint under docket number 14-CV-6017 on August 1, 2014. Hervochon alleges that he sustained bodily injuries after falling from a scaffold, provided by his

5

employer Hennessey, that collapsed while performing construction and renovation work for his employer, at the Premises on the McSpedon Hall Project. The accident occurred on July 27, 2013. The complaint seeks monetary compensation for damages he allegedly sustained as a result of Iona's negligence and violations of New York Labor Law Sections 200, 240, and 241(6) and negligence. *See* Ex. E.

### *The Gotham Policy*

At issue here is the Gotham Policy—a commercial general liability policy of insurance issued to Hennessey for the period of April 1, 2013 to April 1, 2014, bearing policy number GL2013LHB00783. Regarding additional insured coverage, an endorsement to the Gotham Policy, CG 20 10 07 04, entitled "Additional Insured – Owners, Lessees or Contractors – Scheduled Person Or Organization," sets forth in the "Schedule", in relevant part:

> Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.

*See* Ex. C, CG 20 10 07 04.

Paragraph A, Section II of the above-referenced endorsement further provides, in relevant part, as follows:

> Who is an Insured is amended to include as an additional Insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> 1. Your acts or omissions; or
>
> 2. The acts or omissions of those acting on your behalf;
>
> In the performance of your ongoing operations for the additional Insured(s) at the location(s) designated above.

*See* Ex. C, CG 20 10 07 04, Section II - A.

5943243v.1

There can be no dispute that pursuant to the Hennessey Contract, Iona falls within the scope of the Gotham Policy's "additional insured" endorsement. The provision at issue is found in the Gotham Policy's "Contract Liability" exclusion. The Gotham Policy excludes contractual liability, but creates an exception for liability assumed in an "insured contract" (which includes contractual indemnification obligations), in relevant part as follows:

SECTION I – COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY
DAMAGE LIABILITY

    \*\*\*

2.     Exclusions

This insurance does not apply to:

    \*\*\*

b. Contractual Liability

    \*\*\*

This exclusion does not apply to liability for damages:

    \*\*\*

(2)    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" ... provided:

(a)    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

5943243v.1

*See* Ex. C, Section I-2b(2).

The term "insured contract" is defined, in relevant part, as follows:

SECTION V –DEFINITIONS

\*\*\*

9.     "Insured contract" means:

\*\*\*

f.     That part of any other contract or agreement pertaining to    your
       business ... under which you assume the tort liability of
       another party   to pay for "bodily injury" ... to a third person or
       organization. . . . Tort liability means a liability that would be
       imposed by law in the absence of any contract or agreement.

\*\*\*

*See* Ex. C, Section V-9(f), at p. 11 of 13.

### *Gotham's Denial of Coverage*

Following the commencement of the Hervochon Action, on or about February 4, 2014,

United Educators, on behalf of Iona, tendered the defense and indemnification of Iona to Gotham

as an additional insured. *See* Rule 56.1 Statement at ¶ 32; Ex. F. On or about October 3, 2014,

Gotham responded to Iona's tender of its defense and disclaimed any obligation to defend or

indemnify Iona with respect to the Hervochon Action, indicating in part, that Iona was not an

additional insured on the Gotham Policy. *Id.* at ¶ 33; Ex. G. On or about October 20, 2014, Iona

wrote to Hennessey directly seeking defense and indemnification with respect to the Hervochon

Action. *Id.* at ¶ 34; Ex. I. Based on Gotham's refusal to indemnify and defend Iona, Hennessey

has failed to comply with the terms of the Hennessey Contract entered into between the parties

with respect to its indemnification and defense of Iona. *Id.* at ¶ 36. Likewise, Gotham has

completely failed to comply with the terms of the contract entered into between Hennessey and

Iona, as well as the policy of insurance issued by Gotham to Hennessey, with respect to its

8

obligation to indemnify and defend Iona. That failure is continuing. Based upon Gotham's failure to comply with the terms of the contract between Hennessey and Iona and its insurance policy with Hennessey, Iona has and continues to suffer and sustain damages including, but not limited to attorneys' fees, costs and disbursements. *Id.* at ¶ 44.

Consequently, on or about November 25, 2014, Iona commenced a third-party action against Hennessey. Rule 56.1 Statement at ¶ 36; Ex. J. Pursuant to a letter from Gotham to Hennessey dated December 19, 2014, Gotham is providing a defense to Hennessey in the Third-Party Action, under a reservation of rights and disclaimer of coverage. *Id.* at ¶ 39; Ex. K. Subsequently, based upon Gotham's disclaimer of any obligation to defend and indemnify Iona, on March 27, 2015, Iona commenced a second third-party action against Gotham ("Second Third-Party Action"). *Id.* at ¶ 44; Ex. N.

### Standard Of Review

The standard for summary judgment is familiar and well-settled. Federal Rule 56 allows for summary judgment where the evidence demonstrates that "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). A court may grant a motion for summary judgment when the moving party carries its burden of showing that no triable issues of fact exist. *See Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990).

To raise a triable issue of fact, the non-movant "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that

there is a genuine issue for trial.'" *Powell v. National Bd. of Med. Examiners*, 364 F.3d 79, 84

(2d Cir. 2004), quoting *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993). "In the

absence of any disputed material fact, summary judgment is appropriate." *Bishop v. Toys "R"*

*Us-NY, LLC*, 2009 U.S. Dist. LEXIS 17377, at *11 (S.D.N.Y. Feb. 19, 2009) (internal citation

omitted).

### Argument

### Third Party Action

### POINT I

### IONA IS ENTITLED TO SUMMARY JUDGMENT AGAINST HENNESSEY ON ITS THIRD, FOURTH, AND FIFTH CAUSES OF ACTION

#### A. Hennessey Must Indemnify and Defend Iona

##### 1. Hennessey Acknowledges its Obligation to Indemnify and Defend Iona

Hennessey executed the Hennessey Contract before the happening of Hervochon's

accident, and therefore, Hennessey has not contested that it is required to indemnify and defend

Iona. In fact, not only does Hennessey acknowledge that it executed the Hennessey Contract and

fully intended to be bound by the terms of the Hennessey Contract prior to Hervochon's

accident, Hennessey has instituted a fourth-party action against Gotham based, in part, on

Hennessey's obligations to indemnify Iona. *See* Ex. S. Here, there is no controversy regarding

the terms of the Hennessey Contract which require Hennessey to indemnify Iona.

##### 2. Iona Has Established its Right to Contractual Indemnification

Iona's entitlement to indemnification can be clearly implied from the language and

purpose of the entire agreement and the surrounding facts and circumstances. *See LaRosa v.*

*Internap Network Servs. Corp.*, 83 A.D.3d 905 (2d Dept. 2011), quoting *George v. Marshalls of*

10

*MA, Inc.*, 61 A.D.3d 925, 930 (2d Dept. 2009). As established above, the Hennessey Contract was executed by Hennessey before commencing work (*see* Ex. P, at 57:11-12) and was therefore effective on the date of Hervochon's accident. As such, Iona's entitlement to indemnification is expressly provided for in the Hennessey Contract. *See Kielty v. AJS Constr. Of L.I., Inc.*, 83 A.D.3d 1004 (2d Dept. 2011); *Bellefleur v. Newark Beth Israel Med. Ctr.*, 66 A.D.3d 807 (2d Dept. 2009); *Kader v. City of N.Y. Hous. Preserv. & Dev.*, 16 A.D.3d 461 (2d Dept. 2005). As set forth above, the Hennessey Contract includes an indemnification provision which obligates Hennessey to defend and indemnify Iona with respect to incidents as alleged in the Hervochon Action. *See* Ex. B, Section 14. And, it cannot be disputed that, prior to Hervochon's accident Hennessey executed the contract.

Even if Hennessey had not executed the contract prior to Hervochon's accident (which it did), the Hennessey Contract would still be a valid and binding agreement applicable to the Hervochon Action. The New York Court of Appeals "ha[s] long held that a contract may be valid even it if is not signed by the party to be charged." *Flores v. Lower E. Side Serv. Ctr., Inc.*, 4 N.Y.3d 363, 368-69 (2005) (finding that "an unsigned contract may be enforceable, provided there is objective evidence establishing that the parties intended to be bound"). At bar, the record evidence shows that Hennessey does not dispute the validity of the Hennessey Contract. *See* Ex. M. The parties mutually agreed and understood that Hennessey's work on the McSpedon Hall project was subject to the terms and conditions of the Hennessey Contract. *See* Ex. M. There were no issues or disputes between the parties relating to the terms of the contract, and, at all times Hennessey was operating under the correct assumption that its indemnification obligations to Iona under the Hennessey Contract were valid and enforceable on the date of Hervochon's accident. *See* Ex. P, at 108:8-18.

11

Accordingly, Hennessey has an independent obligation to defend, indemnify, and hold Iona harmless irrespective of the coverage issue. Therefore, summary judgment in favor of Iona on its third cause of action for indemnification must be granted.

B. **Hennessey Breached the Contract by Failing to Procure Insurance and Indemnify Iona**

There is no dispute that the Hennessey Contract required Hennessey to procure additional insured coverage for Iona in connection with the McSpedon Hall Project. Nor is there any dispute that the claims against Iona in the Hervochon Action fall within the scope of coverage under the Gotham Policy. Gotham's denial of Iona's tender establishes that Iona was not named as an additional insured on the policies that were procured by Hennessey. This is a direct breach of the terms and conditions of Section 13 of the Hennessey Contract, which required Hennessey to procure and maintain at its own expense a policy of insurance under which Iona was to be named as an additional insured. A promisee seeking summary judgment based upon a promisor's failure to name the promisee as an additional insured, as required by the contract between the two, need only show that the contract so required and that the promisor failed to comply with this provision. *See Kinney v. G.W. Lisks Co., Inc.*, 76 N.Y.2d 215 (1990); *DiMuro v. Town of Babylon*, 210 A.D.2d 373 (2d Dept. 1994).

A failure by the promisor to procure insurance for the benefit of the promisee, pursuant to an insurance procurement provision, constitutes a breach of contract by the promisor. *See Kinney v. G.W. Lisk Co.*, 76 N.Y.2d 215 (1990); *Zito v. Occidental Chemical Corp.*, 259 A.D.2d 1015 (4th Dept. 1999). In Iona and Hennessey's longstanding relationship, Hennessey's general practice was always to provide additional insured coverage to Iona. As with all of their prior contracts, the Hennessey Contract expressly obligated Hennessey to maintain insurance in a

12

specified amount and to name Iona as an "additional insured" on its policy. *See* Ex. B, Section 14.

Based on Gotham's refusal to defend and indemnify Iona as an additional insured, Hennessey breached its contractual obligation to procure insurance. *See Kinney v. G.W. Lisk Co.*, 76 N.Y.2d 215 (1990); *Zito v. Occidental Chemical Corp.*, 259 A.D.2d 1015 (4th Dept. 1999). While the manner in which an insurance company interprets its policy is outside the control of Hennessey, this does not exonerate Hennessey from its contractual obligation to procure proper insurance. *See* Ex. B, Section 13.

As set forth above, Section 14 of the Hennessey Contract expressly obligates Hennessey to indemnify, defend, and hold Iona harmless in the Hervochon Action and Iona has established its entitlement to same from Hennessey as a matter of law. There were no issues or disputes between the parties relating to the terms of the contract, and, at all times Hennessey was operating under the correct assumption that its obligations to Iona under the Hennessey Contract were valid and enforceable on the date of Hervochon's accident.

While it is both Hennessey's and Iona's position that Gotham is ultimately responsible for indemnifying and defending Iona pursuant to its policy with Hennessey, under Section 14 of the Hennessey Contract, Hennessey's obligation to indemnify, defend, and hold Iona harmless is independent of Gotham's.

Since *no* coverage has been made available to Iona, Hennessey is in breach of the contract's terms and obligations, and summary judgment on its fourth and fifth causes of action must be granted.

13

## POINT I

## GOTHAM MUST INDEMNIFY AND DEFEND IONA BECAUSE THE HENNESSEY CONTRACT IS AN INSURED CONTRACT AND IONA QUALIFIES AS AN ADDITIONAL INSURED UNDER THE GOTHAM POLICY

Hennessey executed its contract with Iona prior to Hervochon's accident, which contractually obligated Hennessey: (i) to procure liability insurance that included Iona as an additional insured under such policy; and (ii) to indemnify and defend Iona in the Hervochon Action. *See* Ex. B, Section 14. As set forth above, Gotham's policy with Hennessey excludes contractual liability, but creates an exception for liability assumed in a written contract "executed" before the loss. *See* Ex. C, Section I-2(b)(2). Here, it is undisputed that there was, in fact, a written contract between the parties, "executed" by Hennessey and being performed prior to Hervochon's accident. However, Gotham's inexplicable denial of coverage is based on its assertion that the Hennessey Contract was not "executed" prior to Hervochon's accident. However, all of the evidence conclusively shows the Hennessey Contract was fully formed, "executed," and being performed at the time of the accident. Gotham simply cannot prove that the Hennessey Contract was not executed before the accident when, in fact, both parties testified that the Hennessey Contract was "executed" prior to Hervochon's accident. *See* Ex. P, at 96:15-23; Ex. O, at 57:11-12; 50:10-16.

A. **The Hennessey Contract Was Executed Prior to Hervochon's Accident**

As a matter of law, the Hennessey Contract was "executed" when Hennessey signed the contract and delivered it to Iona prior to the Hervochon accident. In the context of an insurance policy, the courts "must give unambiguous provisions of an insurance contract...their plain and ordinary meaning." *See 10 Ellicott Square Court Corp. v. Mt. Valley Indem. Co.*, 634 F.3d 112,

14

119 (2d Cir. 2010) *quoting Essex Ins. Co. v. Laruccia Constr., Inc.*, 71 A.D.3d 818, 819 (2d

Dept. 2010). And, in the context of interpreting a written contract, such as an insurance policy,

the term "executed" means, *inter alia, signed. See 10 Ellicot Square Court Corp.*, 634 F.3d at

120; *see also, Lynch v. Figge,* 200 A.D. 92, 94 (2d Dept. 1922) ("That executing and signing are

ordinarily used as synonymous terms, it seems to [the Court] is not open to question.... The word

'executed,' as used in statutes and decisions generally, has the meaning of 'signed.'"). And, in

New York, the courts routinely "refer to the dictionary to determine the plain and ordinary

meaning of words to a contract." *Mazzola v. Cnty. of Suffolk,* 143 A.D.2d 734, 735 (2d Dept.

1988). *"Black's Law Dictionary* defines "executed" as: "1. (of a document) that has been signed.

2. That has been done, given, or performed." *10 Ellicot Square Court Corp.,* 634 F.3d at 120,

quoting *Black's Law Dictionary* 650 (9th ed. 2009). Additionally, "[a] note in the definition

warns '[t]he term 'executed' is a slippery word.... A contract is frequently said to be *executed*

when the document has been signed, or has been signed, sealed, and delivered." *See id.*

Accordingly, it is well settled in New York that "executed" means *signed* as it relates to a written

contract that has not been fully performed. For example, in *Rodless Properties, L.P. v.*

*Westchester Fire Insurance Co.,* 40 A.D.3d 253 (1st Dept. 2007), the court addressed the issue of

when a contract is "executed," in the context of interpreting an additional insured endorsement

that conditioned coverage on the existence of an executed contract before the loss. The court

found that the term is unambiguous, citing *Black's Law Dictionary,* which defines "executed," in

the contract context, as a contract that has been either *signed* or fully performed. And, the

Second Circuit in recognizing this uniformity amongst the Departments of the Appellate

Division concluded it was compelled to follow the same standard as the courts in New York.[2]

---

[2] *See 10 Ellicott Square Court Corp.,* 634 F.3d at 120, n.10 ("The parties have not pointed

15

"New York courts employ the standard indicated by the definition in *Black's Law Dictionary*, requiring that a contract be either signed or fully performed before it can be considered executed." *See 10 Ellicott Square Court Corp.*, 634 F.3d at 120.

Here, the Hennessey Contract was signed by Hennessey and therefore "executed" prior to Hervochon's accident when Hennessey signed it and returned it to Iona prior to commencing work. And, it is undisputed between the parties to the Hennessey Contract that there was a written, "executed" contract being performed by the parties prior to Hervochon's accident. *See* Ex. P, at 96:15-23; Ex. O, at 50:10-16; 57:11-12. Because the Hennessey Contract was "executed" prior to Hervochon's accident, the Hennessey Contract qualifies as an "insured contract" under the Gotham Policy and Iona is entitled to coverage in connection with the Hervochon Action as an "additional insured" under the Gotham Policy.

Only Gotham, a stranger to the Hennessey Contract, asserts that the Hennessey Contract was not "executed" at prior to Hervochon's accident. However, based upon the plain meaning of the word "executed" contained in the policy it drafted, Gotham cannot deny additional insured coverage to Iona. "Execution" under contract law can only mean two things (e.g., signed, or performance of an unsigned agreement). Here, the Hennessey Contract was signed by Hennessey, and thus "executed," prior to Hervochon's accident.

### B. The Terms of an Insurance Policy are Construed Against the Insurer

The term "executed" is not defined in the Gotham Policy and since Gotham drafted its policy the terms of the policy must be construed against it. *See Handelsman v. Sea Ins. Co.*, 85 N.Y.2d 96 (1994) (holding the term "insured" must be resolved in favor of policyholder); *see*

to, nor have we ourselves discovered, an opinion of the New York Court of Appeals addressing the definition of 'executed' as it relates to contracts. Because there is no disagreement among the Departments of the Appellate Division in this regard, however, we will apply the decisions of those courts.").

16

*also Consolidated Edison Co. of N.Y. v. Allstate*, 98 N.Y.2d 208 (2002).

As established above, the law is clear that the word "executed" means *signed* or fully performed—and nothing else. If Gotham's denial of coverage depends on a different interpretation of the plain meaning of the word "executed" then it should have simply and clearly stated so in its policy. Therefore, it must be presumed that by deciding to use the undefined term "executed," Gotham intended to adopt the well settled definition of "executed."

And here, the evidence shows that the Hennessey Contract was "executed" prior to Hervochon's accident when Hennessey signed the contract. As the sole drafter of its policy, Gotham must accept this result.

Here, the parties to the contract acknowledge that Hennessey signed and delivered the Hennessey Contract prior to Hervochon's accident. *See* Ex. P, at 96:15-23; Ex. O, at 50:10-16; 57:11-12. At his deposition, Thomas Hennessey testified that as president of Hennessey he executed the Hennessey Contract prior to commencing work on the McSpedon Hall Project. *See* Ex. P, at 57:11-12. Hennessey had completed numerous jobs for Iona over the course of a thirty year relationship, resulting in the execution of hundreds of agreements all of which contained the identical indemnification and insurance provisions. *See* Ex. P, at 96:15-23. And, Hennessey was operating under the correct assumption that it was obligated under the Hennessey Contract when work began on the McSpedon Hall Project, prior to Hervochon's accident.

### C. The Hennessey Contract is an "Insured Contract" and Iona Qualifies as an "Additional Insured" under the Gotham Policy

In light of the fact that the Hennessey Contract was "executed" prior to the Hervochon accident, Gotham cannot now deny coverage to Iona as an "additional insured." As fully set forth above, an "additional insured" is defined under the Gotham Policy as:

Any person or organization for whom you are performing operations when you

17

and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.

*See* Ex. C, CG 20 10 07 04, Section II-A. Hennessey was performing "operations" *to wit*: the

McSpedon Hall Project, in accordance with the terms of the Hennessey Contract. Accordingly,

Iona qualifies as an "additional insured" under the Gotham Policy.

Likewise, the Hennessey Contract qualifies as an insured contract under the Gotham

Policy. The Gotham Policy defines an "Insured Contract" as follows:

> That part of any other contract or agreement pertaining to   your   business   .   .   .
> under which you assume the tort liability of another party to pay for "bodily
> injury" . . . to a third person or organization. Tort liability means a liability that
> would be imposed by law in the absence of any contract or agreement.

*See* Ex. C, Section V-9(f). Hennessey "executed" its contract with Iona prior to Hervochon's

accident whereby Hennessey assumed the tort liability of Iona. And, the granting of insured

contract coverage quoted above expressly contemplates coverage for parties other than insureds,

where there exists an agreement under which the named insured agreed to indemnify and defend

third parties in tort actions alleging bodily injury, as in the Hervochon Action.

Where, like here, the loss involves an employee (Hervochon) of the named insured

(Hennessey), who is injured while performing work on the named insured's behalf pursuant to a

contract (the Hennessey Contract), there is a sufficient causal connection to trigger the additional

insured operations endorsement and fault is immaterial to this determination. *Hunter Roberts*

*Constr. Group, LLC v. Arch Ins. Co.*, 75 A.D.3d 404, 408 (1st Dept. 2010).

By "executing" its contract prior to Hervochon's accident Hennessey satisfied the

Gotham Policy's requirements to qualify as an "insured contract." *See* Ex. P, at 11-12. The Court

must therefore grant Iona summary judgment on its second third-party complaint and declare that

there is contractual indemnity coverage under the Gotham Policy, because Iona qualifies as an

18

"additional insured" and the Hennessey Contract qualifies as an "insured contract" under the Gotham Policy.

### D. Having Breached its Duty to Defend Iona, Gotham Must Reimburse Iona For the Past and Accruing Costs of Defense, with Interest

As an "additional insured" under the Gotham Policy, Iona is entitled to reimbursement for its costs related to the Hervochon Action. An additional insured may recover its defense costs from an insurer where an underlying complaint's allegations brought the action within the scope of its policy, but breached its duty to defend the additional insured. *Davidson v. Hilton Hotels Corp.*, 266 A.D.2d 336, 337 (2d Dept. 1999). "[I]n the event of a breach of the insurer's duty to defend, the insured's damages are the expenses reasonably incurred by it in defending the action after the carrier's refusal to do so." *National Union Fire Ins. Co. of Pittsburgh v. Greenwich Ins. Co*, 103 A.D.3d 473, 474 (1st Dept. 2013). These damages include "interest from the date it paid each legal bill." *Id.* This prejudgment interest is at the statutory rate of nine percent annually. *United Parcel Serv. v. Lexington Ins. Group*, 983 F. Supp. 2d 258, 268 (S.D.N.Y. 2013); *see* CPLR §§ 5001, 5004.

The Hervochon Action concerns bodily injury, well within the scope of the Gotham Policy. As such, Gotham breached its duty to defend Iona upon refusing United Educator's tender demanding Iona's defense and indemnity. *See* Ex. F; Ex. G. As demonstrated, *supra*, Gotham must defend Iona as an additional insured under the Gotham Policy because the Hennessey Contract was valid and effective on the date of Hervochon's accident and Iona qualifies as an additional insured under the Gotham Policy. Gotham must therefore reimburse Iona for the past and accruing costs incurred in its defense, together with nine percent annual interest from the date each legal bill was paid.

5943243v.1

## Conclusion

For the reasons set forth above, Iona's motions for summary judgment against Hennessey and against Gotham should be granted in their entirety.

Dated: White Plains, New York
March 30, 2016

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for Iona

Peter A. Meisels
John Flannery
Daniel B. Fix
1133 Westchester Avenue
White Plains, NY 10604
(914) 323-7000
peter.meisels@wilsonelser.com
john.flannery@wilsonelser.com
daniel.fix@wilsonelser.com
Our File No.: 08329.00040

5943243v.1