UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
KENNETH M. HERVOCHON,

        Plaintiff,

  - against -

IONA COLLEGE,

        Defendant/Third-Party Plaintiff,

  - against -

HENNESSEY CONSTRUCTION CO., INC.,

        Third-Party Defendant/Fourth-Party Plaintiff,

  - against -

GOTHAM INSURANCE COMPANY,

        Fourth-Party Defendant.
-------------------------------------------------------------------------x
IONA COLLEGE,

        Defendant/Third-Party Plaintiff/
        Second Third-Party Plaintiff,

  - against -

GOTHAM INSURANCE COMPANY

        Second Third-Party Defendant.

-------------------------------------------------------------------------x

**ORDER ADOPTING REPORT
AND RECOMMENDATION**

No. 14-CV-6017 (CS)

Appearances:

William G. Kelly
Gerber Ciano Kelly Brady, LLP
New York, New York
*Counsel for Plaintiff*

Kevin A. Szanyi
Webster Szanyi LLP
Buffalo, New York
*Counsel for Interested Party Goldberg Segalla LLP*

Peter A. Meisels
Rory L. Lubin
Daniel B. Fix
Allison M. Holubis
Wilson, Elser, Moskowits, Edelman & Dicker LLP
White Plains, New York
*Counsel for Defendant/Third-Party Plaintiff/Second Third-Party Plaintiff Iona College*

Patrick D. Bonner, Jr.
Menz Bonner Komar & Koenigsberg LLP
White Plains, New York
*Counsel for Third-Party Defendant/Fourth-Party Plaintiff Hennessey Construction Co., Inc.*

Ann Odelson
Kennedys CMK, LLP
New York, New York
*Counsel for Second Third-Party Defendant/Fourth-Party Defendant Gotham Insurance Co.*

Seibel, J.

Before the Court are the objections of Gerber Ciano Kelly Brady, LLP ("Gerber Ciano"), (Doc. 333 ("Gerber Ciano Obj.")), to Magistrate Judge Paul E. Davison's January 18, 2019 report and recommendation that Goldberg Segalla LLP ("Goldberg") be awarded 98% of the attorney's fees stemming for the underlying action in this case, (Doc. 331 ("Jan. 18, 2019 R&R")), as well as the objections of Iona College ("Iona"), (Doc. 338 ("Iona Obj.")), and Gotham Insurance Co. ("Gotham"), (Doc. 341 Ex. 2 ("Gotham Obj.")), to Judge Davison's February 15, 2019 report and recommendation that Gotham pay litigation costs and fees for Iona in the amount of $217,229.17 plus statutory pre-judgment interest and for Hennessey Construction Co., Inc. ("Hennessey") in the amount of $69,813.20 plus statutory pre-judgment interest, (Doc. 335 ("Feb. 15, 2019 R&R")). Familiarity with prior proceedings is presumed.

2

## I. LEGAL STANDARD

A district court reviewing a report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The district court "may adopt those portions of the report to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 72(b)) (citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). If a party fails to object to a particular portion of a report and recommendation, further review thereof is generally precluded. *See Mario v. P&C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002).

"A party that objects to a report and recommendation must point out the specific portions of the report and recommendation to which they [*sic*] object." *J.P.T. Auto., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 659 F. Supp. 2d 350, 352 (E.D.N.Y. 2009). The court must review *de novo* any portion of the report to which a specific objection is made. *See* 28 U.S.C. § 636(b)(1)(C); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). "[W]hen a party makes conclusory or general objections, or simply reiterates [the] original arguments," a court will review the report only for clear error. *Alaimo v. Bd. of Educ.*, 650 F. Supp. 2d 289, 291 (S.D.N.Y. 2009). "Furthermore, [even] on *de novo* review, the Court generally does not consider arguments or evidence which could have been, but were not, presented to the Magistrate Judge." *United States v. Vega*, 386 F. Supp. 2d 161, 163 (W.D.N.Y. 2005).

## II.     DISCUSSION

### A.     Gerber Ciano's Objections

Gerber Ciano did not object to Judge Davison's rulings that (1) Goldberg be awarded attorney's fees on a contingent-fee basis corresponding to its prorated share of the work performed on the whole case, (2) Gerber Ciano performed no more than 3% of the total hours worked on the case, (3) the difficulty of the work performed by Goldberg was substantially greater than the difficulty of the work performed by Gerber Ciano, (4) the case was settled in principle by Goldberg, (5) the settlement was significant, and (6) former Goldberg attorney and current Gerber Ciano attorney William Kelly's end-of-year distribution from Goldberg (and thus the extent to which he will profit from his work on this case while at Goldberg) is the subject of a separate and confidential arbitration and is not an issue before the Court.[1]  Accordingly, I review those portions of the January 18, 2019 R&R for clear error, *Alaimo*, 650 F. Supp. 2d at 291 (S.D.N.Y. 2009), and finding none, I adopt as the decision of the Court those portions of the January 18, 2019 R&R.

#### 1.     Proportionate Share of Legal Fees

Gerber Ciano objects to the January 18, 2019 R&R on the grounds that Judge Davison failed to consider three factors in assessing the parties' proportionate share of legal fees:

---

[1] On February 28, 2019, Gerber Ciano filed a reply memorandum of law in support of its objections to the January 18, 2019 R&R.  (Doc. 336 ("Gerber Ciano Reply").)  As a threshold matter, "Rule 72(a) . . . does not require the Court to permit a party to file a reply in support of an objection," and accordingly, I have discretion to disregard Goldberg's reply, especially considering it was filed "without Court permission." *Tiffany & Co. v. Costco Wholesale Corp.*, No. 13-CV-1041, 2013 WL 5677020, at *2 n.2 (S.D.N.Y. Oct. 18, 2013).  Even if I did consider the reply, Gerber Ciano's conclusory assertion that it "objected to the entirety of Magistrate Judge Davison's Report and Recommendation," (Gerber Ciano Reply at 2), without providing any specific objection to the six rulings mentioned above, does not rise to the level of a specific, written objection, *see Schildwachter v. Berryhill*, No. 17-CV-7277, 2019 WL 1115026, at *1 (S.D.N.Y. Mar. 11, 2019).

4

(1) Goldberg's lack of skill required to handle the matter, (2) Goldberg's attorneys' skills and experience, and (3) the effectiveness of Goldberg bringing the matter to a resolution. (*See* Gerber Ciano Obj. at 2 (citing *Cruz v. Olympia Trails Bus Co.*, No. 99-CV-10861, 2005 WL 3071473, at *3 (S.D.N.Y. Nov. 14, 2005) ("In assessing an attorney's proportionate share, courts consider the following factors: the time and labor spent by each, the actual work performed, the difficulty of the questions involved, the skills required to handle the matter, the attorney's skills and experience, and the effectiveness of counsel in bringing the matter to resolution.")).) Specifically, Gerber Ciano argues that Goldberg lacked skill and experience and failed to bring the matter to resolution by letting the case "linger[]" for three months waiting for Medicare Set Aside ("MSA") approval, which was not required, (*id.*). I disagree.

As Judge Davison noted, the lawyers at Goldberg and Gerber Ciano who worked on the Hervochon case were almost entirely the same people. (Jan. 18, 2019 R&R at 11; Doc. 333-1 ¶ 3 (Kelly attesting that "I took this case from beginning to end"); Doc. 315 ("Belter Decl.") ¶¶ 8, 13 (Kelly and Laura A. Martin were the two Goldberg attorneys who billed the most hours on the file while at Goldberg and were also the attorneys who left to start Gerber Ciano).) Thus, any argument that Goldberg lacked skill or expertise while handling the case would generally apply with equal force to Gerber Ciano, as the Goldberg lawyers were the same individuals who handled the case at Gerber Ciano.

Further, Gerber Ciano's argument that Goldberg's lack of skill and experience is clear because it let the case languish during September, October, and November while pursuing an MSA that was not required, (*see* Gerber Ciano Obj. at 3), is unconvincing. On November 9, 2017, Kelly, while still at Goldberg, wrote to Hervochon that "there is no formal requirement for a Medicare Set Aside in liability cases." (Belter Decl. Ex. M.) Thus, any argument that Kelly

5

was misled by other Goldberg attorneys about whether an MSA was *required* is belied by the fact that Kelly knew while he was at Goldberg that no formal requirement existed.[2]

Gerber Ciano next argues that it was the counsel that brought this matter to resolution because it determined the MSA was unnecessary. (Gerber Ciano Obj. at 3-4.) But Gerber Ciano "brought the case to an effective resolution," (*id.* at 3), only in the sense that it was minding the store at the end. The evidence shows that the significant work was done when the case was at Goldberg. Goldberg litigated this case for nearly four years, ultimately agreeing in principle to a settlement of nearly $1 million. (Jan. 18, 2019 R&R at 2, 8.) The key issues to be resolved to reach that settlement were achieved through Goldberg's significant efforts: the initial review of the underlying labor law case; negotiations with Defendant's insurance carrier; filing the Complaint; attending court conferences; taking and defending depositions of Defendant and Plaintiff, respectively; retaining experts; preparing for and attending four expert depositions, including two of Plaintiff's treating physicians; engaging in dispositive motion practice; preparing for trial, including filing motions *in limine* and proposed *voir dire* questions; and attending mediation sessions and settlement conferences, one of which concluded with reaching a settlement in principle. (*See* Belter Decl. Ex. B (Goldberg's time sheets explaining completed tasks); *id.* Ex. J (same).) While the settlement was not finalized until Gerber Ciano took over,

---

[2] In its reply brief, which I need not consider, Gerber Ciano argues that Goldberg's "creative cut and paste job on the November 9, 2017, correspondence to Mr. Hervochon makes a blatant misrepresentation of the contents of that letter." (Gerber Ciano Reply at 3.) Gerber Ciano asserts that a review of the entire, unredacted letter shows that "an MSA was recommended at that time." (*Id.*) The Court reviewed the entire letter *in camera*, and Goldberg did not make any misrepresentations. While the full letter makes clear that Goldberg, through Kelly, recommended obtaining an MSA, the letter also contains Kelly's statement that there is no formal requirement for an MSA in liability cases, and nothing in the unredacted version contradicts that statement. Accordingly, while Gerber Ciano may have performed "independent research that confirmed that an MSA was not needed," (*id.*), Kelly explicitly stated while at Goldberg that he knew it was not needed.

6

the settlement figure was obtained by Goldberg and remained unchanged until and through finalization, which suggests Goldberg is entitled to the vast majority of attorney's fees. *See Adams v. City of N.Y.*, No. 07-CV-2325, 2014 WL 4649666, at *14 (E.D.N.Y. Sept. 16, 2014) ("[T]he firm who obtains settlement is deemed more effective in bringing the matter to resolution."). Gerber Ciano also did not object to Judge Davison's finding that Goldberg performed 473.9 hours of work on this case, while Gerber Ciano worked at most 14 hours. (Jan. 19, 2018 R&R at 9, 11.) And despite Gerber Ciano's argument to the contrary, I find that Goldberg's nearly 500 hours on this case were far more critical to bringing this matter to resolution than the 14 hours or less that Gerber Ciano spent tying up loose ends to finalize the settlement that Goldberg had already negotiated.[3]

Accordingly, having reviewed the MSA matter *de novo*, I find that Gerber Ciano has not shown that Goldberg's handling of the MSA establishes that Goldberg lacked the skill or experience required to handle the matter or failed to effectively bring the matter to a resolution. Finding no clear error in Judge Davison's other conclusions in the January 18, 2019 R&R, I adopt as my decision Judge Davison's conclusion that Goldberg should be awarded 98% of the fee and Gerber Ciano awarded 2% of the fee.[4]

---

[3] Indeed, Gerber Ciano asserts that a Goldberg associate gave the erroneous advice that an MSA was necessary and that Gerber Ciano's research ultimately showed that an MSA was not required. (*See* Gerber Ciano Obj. at 3.) Assuming that to be true, had the Goldberg associate's advice been correct, Gerber Ciano's hours would have been that much lower.

[4] Gerber Ciano's argument that Hervochon's declaration, (Doc. 323-1), supports awarding a greater percentage of attorney's fees to Gerber Ciano does not alter my analysis. While Hervochon attests to his desire to have Gerber Ciano receive any attorney's fees greater than $32,405.00, (*id.* ¶¶ 11-12), Gerber Ciano has provided no support (nor can the Court find any) for the notion that the Plaintiff's desire as to how attorney's fees are to be allocated has a bearing on assessing an attorney's proportionate share.

### 2. Goldberg's Account Stated Letter

Gerber Ciano also objects to Judge Davison's January 18, 2019 R&R on the ground that Goldberg's attorney's fees should be limited to $32,405.00 because it billed Hervochon for services rendered in that amount and thereby waived any right to additional fees or a contingency fee. (Gerber Ciano Obj. at 5-6.) First Gerber argues that Judge Davison erred by choosing to "focus on the timing of Gerber Ciano Kelly Brady's raising the account stated argument in the motions," as opposed to choosing to "focus on the audacious actions of a law firm serving its former client with an account stated for payment after the filing of dispute motions in Federal Court over a fee." (*Id.* at 5.) Second, Gerber Ciano argues that "the Magistrate Judge dismissed this is [*sic*] as a mere clerical error even while acknowledging that Goldberg Segalla's serving of that bill 'defies common sense.'" (*Id.* at 6.)

Gerber Ciano's arguments are rejected. Gerber Ciano erroneously argues that Judge Davison chose to focus on the timing of the argument as opposed to its merits, when in fact Judge Davison stated that he "need not decide" whether Gerber Ciano's argument was untimely because, among other reasons, "this new argument raised by Gerber Ciano lacks merit." (Jan. 18, 2019 R&R at 13.) Gerber Ciano also only partially, if not misleadingly, cites to what Judge Davison said about "common sense." (Gerber Ciano Obj. at 6.) Judge Davison indeed said that it "defies common sense" that Goldberg would send an incomplete bill in a contingency case with a fee motion pending, (Jan. 18, 2019 R&R at 15), but he did so in the context of concluding that the bill was a mistake. That conclusion was correct. Gerber Ciano has pointed to no facts to support its assertion that Goldberg sending Hervochon a bill was anything other than a clerical error, and all of the evidence in the record suggests that the bill was inadvertently sent to Hervochon. First, Hervochon and Goldberg agreed to a contingency-fee arrangement, (Doc. 318 Ex. A (retainer agreement)), and never agreed to an hourly billing arrangement, which suggests

any invoice charging hourly rates was a mistake. Second, the bill, which was dated September 13, 2018, covered only the period from May 16, 2017, until October 23, 2017, which left out the more than three of the years Goldberg worked on the case prior to May 2017, as well as the final month that Goldberg was retained. (*See* Doc. 324 Ex. A.) Gerber Ciano has not provided any theory as to why Goldberg would send a bill for approximately five months of work when it was Hervochon's counsel for almost four years. By contrast, Goldberg provided evidence to establish that the letter was sent by accident when it was attempting to create a demonstrative invoice to provide to the Court. (Doc. 330 ("Felman Decl.") ¶ 3.) Accordingly, Judge Davison correctly found that "the bill sent to Plaintiff by Goldberg was clearly a mistake," and that "*Gerber Ciano's contention*" to the contrary "is belied by . . . common sense." (Jan. 19, 2018 R&R at 14 (emphasis added).) Thus, I agree with Judge Davison that the bill erroneously sent to Plaintiff by Goldberg does not require a departure from the 98% to 2% split of attorney's fees discussed above.

### B. Iona's and Gotham's Objections

Iona objects to Judge Davison's recommendation that Iona not be reimbursed for any of the litigation expenses stemming from the coverage dispute between it and Gotham, (Iona Obj. at 1), and Gotham objects to Judge Davison's recommendation that Gotham not be reimbursed for any of the litigation expenses stemming from the dispute between Gotham and Hennessey, (Gotham Obj. at 2-3).

#### 1. "Legal Steps"

Under New York law,[5] there is

> a "narrow exception" to the general "American" rule that a prevailing party cannot recover attorneys' fees. Under this exception, an insured who prevails in a

---

[5] No party objected to Judge Davison's recommendation that New York law should apply to this dispute, and finding no error in that decision, I adopt Judge Davison's choice-of-law analysis.

9

declaratory action brought by an insurance company seeking to deny a duty to defend and indemnify is allowed to recover fees expended in defending against that action. The insured is allowed fees, that is, "when he has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations."

*U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 369 F.3d 102, 110 (2d Cir. 2004) (quoting *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 21 (1979)). Whether one is in a defensive posture is not the simple matter of whether one is a defendant. "It seems anomalous for the entitlement to fees to turn on the fortuity of whether a party to an insurance contract is cast as the plaintiff or defendant," and thus a party need not be a defendant to be in a defensive posture. *Danaher Corp. v. Travelers Indem. Co.*, No. 10-CV-0121, 2013 WL 364734, at *3 (S.D.N.Y. Jan. 31, 2013) (internal quotation marks omitted), *report and recommendation adopted*, 2013 WL 1387017 (S.D.N.Y. Apr. 5, 2013). Rather, the court looks "beyond the labels . . . to determine whether an insured is in an offensive or defensive position vis à vis its insurer in a dispute over the duty to defend (and indemnify)." *Id.* at *4. In conducting this analysis, the court must determine which party took the first "legal step," and while a legal step need not be the commencement of an action, it must be "tantamount to an action brought by the insurer seeking to free itself from its policy obligations." *City of N.Y. v. Zurich-Am. Ins. Grp.*, 798 N.Y.S.2d 708 (Sup. Ct. 2004), *aff'd*, 811 N.Y.S.2d 773 (App. Div. 2006); *see Lauder v. OneBeacon Ins. Grp., LLC*, 918 N.Y.S.2d 825, 833 (Sup. Ct. 2011).

Both Iona and Gotham object on the ground that Judge Davison erred in his analysis of which party took the first "legal step" and therefore took the offensive position in their respective disputes.

    a.  <u>Iona v. Gotham</u>

Judge Davison found that Iona placed Gotham in a defensive posture when, on March 13, 2015, Iona filed a letter with this Court seeking permission to file a third-party complaint against

Gotham. (Feb. 15, 2019 R&R at 15.) Judge Davison explained that Iona's letter was not merely a manifestation of its intent to sue but was the first step in initiating a suit by meeting a procedural prerequisite under the operative Case Management Plan. (*Id.*) Iona asserts that a "'legal step' is either the filing of an action or the filing of a motion or claim by a litigant that was already a party," (Iona Obj. at 3), so its letter was not a legal step, and thus Gotham was not placed in a defensive posture. Iona's interpretation of what constitute a legal step would require me to employ the exact type of mechanical analysis that other courts have rejected. *See Danaher Corp.*, 2013 WL 364734, at *3 ("[C]ourts have made clear that in certain cases," determining which party was in a defensive position "need not be quite so mechanically applied."). A party need not actually initiate an action to put the opposing party in a defensive position, so long as the party's action is "tantamount" to filing suit. *Lauder*, 918 N.Y.S.2d at 833.

Iona took the step of seeking leave to file a complaint against Gotham because it sought "to pursue a direct action against Gotham," (Doc. 27 at 1-2), and it would have filed first but "had to await this Court's permission before filing," (Doc. 45 at 1). On March 16 and 17, 2015, Hennessey notified Gotham of Iona's March 13 letter to the Court and the Court's March 16 approval of Iona's request, (Doc. 44 at 1), and on March 17, 2015, Gotham initiated its own proceedings against Iona in New Jersey state court. There is no question Gotham's filing in New Jersey was, as Iona acknowledged at the time, (Doc. 45 at 1 (Iona asserting that Gotham's filing in New Jersey was "a transparent tactical maneuver to have its case filed first")), "in direct response to the affirmative action taken by" Iona in undergoing the necessary procedural steps to bring claims against Gotham, and thus Gotham was in a defensive posture. *La. Generating LLC v. Ill. Union Ins. Co.*, No. 10-CV-516, 2014 WL 1270049, at *2 (M.D. La. Mar. 27, 2014).

11

I reject Iona's argument that because it was not required to notify Gotham of its letter, the filing of the letter cannot be considered a legal step. (Iona Obj. at 4-5.) Even though it was Hennessey, not Iona, that notified Gotham of Iona's letter, Iona's letter was the "affirmative action" that induced Gotham's "direct response" of filing its own action in state court. Accordingly, I find that by filing a letter with the Court seeking leave to file a complaint against Gotham (a procedural requirement with which Iona was required to comply based on the Court's scheduling order), Iona initiated the first "procedural event[]" to bring an action against Gotham. *See Danaher Corp.*, 2013 WL 364734, at *6. I therefore adopt as my decision Judge Davison's finding that Iona, as the insured, was not cast in a defensive posture, and thus this case does not fall within the "narrow exception to the general American rule that a prevailing party cannot recover attorneys' fees." (Feb. 15, 2019 R&R at 16 (quoting *Danaher*, 2013 WL 364734, at *3).)

b. Gotham v. Hennessey

Gotham objects to Judge Davison's finding that Gotham took the first legal step with regard to its dispute with Hennessey. Gotham commenced the March 17, 2015 action in New Jersey State Court against Hennessey as well as Iona. (Doc. 272-4.) Ten days later, Iona filed its Third-Party Complaint against Gotham in this case, pursuant to the Court's approval of the letter request described above. (Doc. 29.) Gotham then filed a pre-motion letter stating its intent to move to dismiss Iona's Third-Party Complaint pursuant to the first-filed rule. (Doc. 38.) Hennessey filed its own letter in response and stated its position that if Gotham remained in the case, Hennessey would bring cross-claims against Gotham seeking defense and indemnification. (Doc. 44 at 2.) Gotham did indeed remain in the case, and Hennessey, after receiving permission from the Court, filed a Fourth-Party Complaint against Gotham. (Doc. 63.) Gotham argues that

Hennessey's pre-motion letter and Fourth-Party Complaint make clear that Hennessey was not in a defensive posture in this case. (Gotham Obj. at 3.) I disagree.

An insured is in a defensive position even if it initiates an action against an insurer if the insurer had previously initiated an action against the insured, the "two cases are mirror images of each other," and the insured's claims were brought "in direct response to [the insurer's] attempt to avoid payment under the Policy." *Am. Motorists Ins. Co. v. GTE Corp.*, No. 99-CV-2214, 2000 WL 1459813, at *6 (S.D.N.Y. Sept. 29, 2000), *aff'd*, 30 F. App'x 15 (2d Cir. 2002). Here, Gotham had already placed Hennessey in a defensive posture in the state court case by the time Hennessey filed its letter seeking permission to file a Fourth-Party Complaint. Further, the state case and the instant action are "mirror images of each other" in that they were both seeking rulings on Gotham's policy obligations to Hennessey, and Hennessey's cross-claims were in direct response to Gotham's claim that it was not obligated to defend and indemnify. Accordingly, I find that Judge Davison did not err in recommending that Gotham put Hennessey in a defensive posture here and is obligated to reimburse Hennessey for the costs of prosecuting its claims in this action.

### 2. Whether Iona Is a Real Party in Interest

Gotham also argues that Judge Davison erred in finding that Iona was a real party in interest and that Gotham had waived any argument otherwise. (Gotham Obj. 3-4.)

First, I find that Iona is a real party in interest. An insurer that "has paid an entire loss suffered by the insured . . . is the only real party in interest and must sue in its own name," but if the insurer "paid only part of the loss[,] both the insured and insurer . . . have substantive rights against the tortfeasor which qualify them as real parties in interest." *Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 116-17 (2d Cir. 2002) (third alteration in original) (internal quotation marks omitted). Where the insured pays a deductible, the insurer by definition paid "only part of the

loss," and thus the insured maintains an "independent interest" in the litigation. *Id*. Thus, where the insurer has not fully compensated the insured for its loss, "either party may sue" without the presence of the other. *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 81 (2d Cir. 2005).

Gotham asserts that "Iona has not submitted evidence that it has paid any of this loss," (Gotham Obj. at 4), but Iona's attorney in his declaration swore that Iona had paid his law firm, under its deductible, an amount invoiced on October 8, 2014. (Doc. 267 ¶ 5; *see id.* Ex. V).[6] Gotham provides no reason why that declaration is not sufficient evidence. Gotham also argues that *Ocean Ships* and *St. Paul Fire & Marine* are inapposite because this case is not a subrogation case against a tortfeasor. (Gotham Obj. at 4.) But that argument has no merit. *Ocean Ships* and *St. Paul Fire & Marine* plainly hold that a party is a real party in interest so long as it pays "part of the loss," and there is no requirement that the loss be of a certain magnitude to create an interest. *See Ocean Ships*, 315 F.3d at 116-17; *St. Paul Fire*, 409 F.3d at 81. In fact, *Ocean Ships* made clear that a party may recover more than what it paid as a deductible, as any overpayments are "a matter of contract between the policyholder and the insurer." *Ocean Ships*, 315 F.3d at 117. Iona's insurer did not pay the entire loss as Iona paid its deductible, and accordingly I agree with Judge Davison that Iona is a party in interest.

Second, I agree with Judge Davison that Gotham waived its real-party-in-interest defense. Gotham objected to that recommendation only on the ground that Iona allegedly indicated in 2015 that it, not its insurer, was the real party in interest. (Gotham Obj. at 4.) It

---

[6] Counsel's declaration says that the invoice was dated October 28, 2014, (Doc. 267 ¶ 5), but the invoice itself is dated October 8, 2014, (*id.* Ex. V).

14

makes this argument only by grievously distorting the transcript page it cites.[7] In any event, Judge Davison correctly found, Gotham has been aware of Iona's insurer's role for years. In fact, in the hearing transcript from 2015 that Gotham attached as an exhibit to its objection, the Court asked whether Iona's insurer "is covering [Iona]," to which Iona answered affirmatively, (Doc. 341 Ex. A at 16 ln. 15-19), and when Gotham asked whether Iona's insurer was going to indemnify Iona to the extent there was a judgment or settlement in the underlying case, Iona also answered affirmatively, (*id.* at 17 ln. 11-14). Gotham further admitted in its opposition to Iona's summary judgment motion that Iona's insurer "has acknowledged coverage to Iona in connection with [the underlying action]." (Doc. 124 at 6.) Thus, I do not understand how Gotham can say that "Iona held itself out as being the real party in interest in this case and only conceded otherwise in . . . May 2018." (Gotham Obj. at 4.) Accordingly, I reject Gotham's argument that Judge Davison erred in finding that "Gotham has had knowledge that Iona was receiving coverage from [Iona's insurer], and [Iona's insurer] was attempting to tender defense and indemnification to Gotham on Iona's behalf," (Feb. 15, 2019 R&R at 24), and I adopt that conclusion as my own.

### 3. Reasonableness of Iona's Legal Fees and Costs

Gotham argues that Judge Davison erred in finding Iona's legal fees and costs reasonable in that he likened this case to litigation that is far more complex. Judge Davison did rely on

---

[7] Gotham claims that it indicated that Iona's insurer was the real party in interest and that Iona disagreed and held itself out as the real party in interest. (Gotham Obj. at 2-3.) But, at that 2015 conference, Gotham said nothing about real party in interest. In arguing that it should not have to provide Iona with its underwriting file, Gotham argued, "[T]here is case law that this is really an insurance company and an insurance company doesn't get the underwriting file from another insurance company." (Doc. 341 Ex. A at 4 ln. 5-7.) Iona in response pointed out, "[W]e are not an insurance company, we are a college," and stated that it was asserting a right to coverage under Hennessey's policy with Gotham. (*Id.* at 4 ln. 21-24.) How anybody could reasonably interpret this exchange as shedding any light on the issue of real party in interest, let alone as a representation that Iona was the only such party, eludes the Court.

15

*Danaher Corp. v. Travelers Indemnity Co.*, No. 10-CV-121, 2015 WL 409525, at *15 (S.D.N.Y. Jan. 16, 2015); *Telenor Mobile Communications AS v. Storm LLC*, No. 07-CV-6929, 2009 WL 585968, at *4 (S.D.N.Y. Mar. 9, 2009); and *Big R Food Warehouses v. Local 338 RWDSU*, 896 F. Supp. 292, 295-96 (E.D.N.Y. 1995), for the proposition that "Courts in this Circuit have declined to reduce claimed fees on account of overstaffing based on, *inter alia*, the complexity of the case, prior review and payment of the invoices in dispute, and the need for supervision at court proceedings." (Feb. 15, 2019 R&R at 34.) Judge Davison also relied on *Etna Products Co. v. Q Marketing Group, Ltd.*, No. 03-CV-3805, 2005 WL 2254465, at *3 (S.D.N.Y. June 6, 2005), and *Hutchinson v. McCabee*, No. 95-CV-5449, 2001 WL 930842, at *3 (S.D.N.Y. Aug. 15, 2001), to help define the boundaries of reasonableness when analyzing the use of multiple attorneys on a single task or case, (Feb. 15, 2019 R&R at 32-33). Judge Davison, however, did not regard the instant case as equivalent to those cases. In fact, he agreed with Gotham "that the instant case does not include all the complexities involved in all the cases" listed above. (*Id.* at 36.) But the instant case has been ongoing for more than four years, in two different fora, and "involve[d] the defense of a declaratory action in New Jersey, a contract dispute, multiple coverage actions initiated here, and the defense of the underlying labor law action." (*Id.*) Accordingly, this case is not as simple as Gotham tries to make it out to be. Judge Davison did not err in relying on the aforementioned cases to define the applicable legal standards, and did not err by applying the facts of the instant case to that applicable law.

Gotham also argues that it was error to hold that no hearing was necessary regarding the reasonableness of Iona's attorney's fees. Specifically, Gotham argues that the "invoices provided to Gotham on May 14, 2018 – after the Court scheduled briefing on the fee issue – differed significantly from those annexed as exhibits to Iona's motion three weeks later."

16

(Gotham Obj. at 5.) Gotham, however, failed to identify a single substantive difference between the two sets of invoices Iona provided. Gotham's failure here is not surprising given Judge Davison's determination that the two sets of records were "identical in content" but simply organized in a different manner. (Feb. 15, 2019 R&R at 32.) I have also reviewed the invoices *in camera* and confirmed Judge Davison's finding. (*See* Doc. 260 Exs. M-Q; Doc. 266 Ex. L.) I therefore agree with Judge Davison that Gotham "had sufficient information on which to make detailed objections as to the reasonableness of [Iona's] fees" prior to briefing on the fee issue, yet "failed to raise specific objections as to the reasonableness of the fees and costs Iona is seeking." (Feb. 15, 2019 R&R at 32.) Accordingly, Gotham's request for a hearing, or alternatively for supplemental briefing, on the reasonableness of Iona's fees is denied.

### 4. Pre-judgment Interest Determination

Finally, Gotham objects to the February 15, 2019 R&R on the ground that it awarded statutory pre-judgment interest to Iona and Hennessey. N.Y. C.P.L.R. § 5001(a) requires courts to award pre-judgment interest "upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property." It is well settled that § 5001(a) "does not permit the trial court to exercise any discretion where a party is entitled to such interest as a matter of right." *New Eng. Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 603 (2d Cir. 2003); *see Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 93 (2d Cir. 2000) ("[S]ection 5001 imposes an affirmative mandate on trial courts; they have no discretion not to award prejudgment interest under New York law.").

Gotham, however, argues that pre-judgment interest is not automatically awarded and cites to *Valley Forge Insurance Co. v. ACE American Insurance Co.*, 74 N.Y.S.2d 596, 598 (App. Div. 2018), as an example of an insurance case in which pre-judgment interest was not

17

awarded, (Gotham Obj. at 5.) But *Valley Forge* appears to have involved only equitable claims for which pre-judgment interest is discretionary. *See John Hancock Life Ins. Co. of N.Y. v. Hirsch*, 909 N.Y.S.2d 519, 521 (App. Div. 2010) ("[T]he determination of whether to direct the payment of prejudgment interest in an equitable action such as the present one rests within the sound discretion of the court.") (citing N.Y. C.P.L.R. § 5001(a)). There is no such discretion vested in the trial court for claims of breach of contract, and thus I am required to grant the statutory 9% pre-judgment interest on Iona's and Hennessey's non-equitable claims. *Harleysville Worcester Ins. Co. v. Wesco Ins. Co.*, 314 F. Supp. 3d 534, 551 (S.D.N.Y. 2018) ("[U]nder N.Y. C.P.L.R. § 5001, [Plaintiff] is entitled to prejudgment interest" and "[t]he amount of prejudgment interest to be awarded pursuant to a breach of contract claim is nine percent per annum."), *aff'd*, 752 F. App'x 90 (2d Cir. 2019).

Gotham also argues that pre-judgment interest should not have been awarded because neither Iona nor Hennessey sought a "sum certain," and "no sum certain was, in fact, awarded." (Gotham Obj. at 5-6.) But both parties did seek a sum certain. Hennessey sought "fees . . . in the amount of $69,813.20," (Doc. 273 at 8), and Iona sought "reimburse[ment] in full" of "$319,376.48 in total legal expenses." (Doc. 261 at 2.) And Judge Davison recommended the court award a sum certain: $217,229.17 to Iona and $69,813.20 to Hennessey. (Feb. 15, 2019 R&R at 41.) Thus, I do not understand what it is that Gotham is arguing here, and in any event, I reject the notion that pre-judgment interest is not appropriate. It is required, and therefore 9% statutory interest must be awarded in this case.

### 5. Pre-judgment Interest Calculation

Judge Davison recommended that I direct Iona and Hennessey to submit to the court "proposed judgments, on notice to Gotham, including their proposed pre-judgment interest calculations." (*Id.* at 40.) Gotham objected to this recommendation only on the ground that

18

Judge Davison erred by stating that interest should be computed "from the date on which the invoices were incurred," (*id.*), because the interest should instead be computed from when the invoices were paid, (Gotham Obj. at 6 (citing *Harleysville*, 314 F. Supp. at 552 ("Interest shall be computed from the time each reimbursable expense was paid . . . ."))). I agree with Gotham, and I adopt as the decision of the Court Judge Davison's recommendation regarding pre-judgment interest, with the slight modification that Iona and Hennessey calculate that interest from the date on which the invoice was paid, not incurred.

### III.  CONCLUSION

Accordingly, it is hereby ORDERED that the January 18, 2019 R&R and the February 15, 2019 R&R are adopted as the decisions of the Court, except with the modification described above regarding pre-judgment interest. Therefore, Goldberg is awarded 98% of contingency fee, less the $6,720.00 it has already received,[8] and Gerber Ciano is awarded 2% of the contingency fee.[9] Additionally, Iona's motion is GRANTED in part and DENIED in part, Hennessey's motion is GRANTED, and Gotham's motion is GRANTED in part and DENIED in part. The Clerk of Court is respectfully directed to terminate the pending motions. (Docs. 259, 271, 293, 308, 317, 325.)

Iona and Hennessey are to submit their proposed judgments to the Court by April 10, 2019. Before doing so, they should provide them to Gotham. If there are any objections to the

---

[8] Goldberg claims that this figure is only $6,350. I trust that Goldberg and Gerber Ciano can determine between themselves whether Goldberg received the extra $370, and if Goldberg did not, it should be awarded 98% of the contingency fee less $6,350.

[9] Because I am denying Gerber Ciano's objection, I deny as moot Goldberg's request to file a sur-reply. Accordingly, the clerk of court is respectfully directed to terminate Goldberg's pending letter motion. (Doc. 325.)

19

calculations on Gotham's part and the parties cannot work them out, the parties' respective positions should be set forth in a joint letter.

**SO ORDERED.**

Dated: March 27, 2019
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.